[No. H018379. Sixth Dist. Feb. 11, 1999.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
JEFFREY W. ROAM, Real Party in Interest.

COUNSEL

George W. Kennedy, District Attorney, and Kelly Raftery, Deputy District Attorney, for Petitioner.

No appearance for Respondent.

Norman L. Russell for Real Party in Interest.

Jose R. Villarreal, Public Defender, Nancy Brewer, Deputy Public Defender, Ronald A. Norman, Alternate Public Defender, and Christine D. Mattison, Deputy Alternate Public Defender, for the Santa Clara Public Defender and the Office of the Alternate Santa Clara Public Defender as Amici Curiae on behalf of Real Party in Interest.

OPINION

WUNDERLICH, J.—

## I. INTRODUCTION

The People have petitioned for a writ of mandate directing respondent court to vacate its order releasing real party in interest, Jeffrey W. Roam (Roam), on supervised own recognizance (supervised OR) to attend a drug rehabilitation program at the Delancey Street Foundation (Delancey Street) in Los Angeles. Because Roam pleaded guilty to a serious felony, and also to four prior convictions which qualify as strikes under the "Three Strikes" law,[1] the People contend that the court acted in excess of its jurisdiction in deferring sentencing and releasing Roam postconviction to attend a rehabilitation program.[2]

We agree with the People, and therefore exercise our discretion to proceed with writ review of an issue of first impression: whether the trial court is authorized to release a convicted Three Strikes defendant on supervised OR for the purpose of attending a rehabilitation program prior to sentencing. As we shall explain further, respondent court had no such authority, and acted in excess of its jurisdiction under the Three Strikes law when it released Roam

---

[1] By the term Three Strikes law, we refer to the provisions of Penal Code sections 667 and 1170.12. As the California Supreme Court has stated, these nearly identical statutory provisions codify the Three Strikes law's legislative version and the version as approved by the voters. (Prop. 184, § 1, as approved by voters Gen. Elec. (Nov. 8, 1994); *People v. Williams* (1998) 17 Cal.4th 148, 151, fn. 1 [69 Cal.Rptr.2d 917, 948 P.2d 429].)

[2] All further statutory references are to the Penal Code unless otherwise noted.

post conviction on terms that amounted to informal probation. We therefore issue a peremptory writ directing the court to vacate its supervised OR order.

## II. PROCEDURAL AND FACTUAL BACKGROUND

### A. *Roam's Criminal Record*

In March 1997, after leading police in a high-speed chase on Highway 85, Roam was caught on foot when he abandoned his truck. Subsequent analysis of Roam's blood sample revealed a blood-alcohol level in excess of the legal limit and also the presence of methamphetamine. Roam was then charged by information with six counts: (1) reckless driving with personal use of the vehicle as a deadly weapon, a felony violation of Vehicle Code section 2800.2; (2) driving on a suspended license, a misdemeanor violation of Vehicle Code section 14601.5, subdivision (a); (3) resisting an officer, a misdemeanor violation of section 148, subdivision (a); (4) driving under the combined influence of drugs and alcohol, a misdemeanor violation of Vehicle Code section 23152, subdivision (a); (5) driving under the influence of alcohol, a misdemeanor violation of Vehicle Code section 23152, subdivision (b); and (6) being under the influence of methamphetamine, a misdemeanor violation of Health and Safety Code section 11550, subdivision (a).

Roam was also charged with four prior serious and/or violent felony convictions. Each prior conviction was entered during the 1983-1987 period on a charge of burglary of an inhabited dwelling house. Roam's criminal record also included three additional felony convictions and twelve misdemeanor convictions in California, Nevada, and Oregon, all of which were theft-related. In 1988, Roam was sentenced to 14 years in state prison after a felony conviction for first degree burglary.

Roam was paroled in April 1996. Two months later, he was arrested on a misdemeanor charge of driving under the influence. His parole was revoked, and he was not released again on parole until January 18, 1997. Roam was on parole at the time of the March 12, 1997, reckless driving incident.

### B. *Roam's 1997 Convictions and Related Court Proceedings*

Roam pleaded guilty on August 18, 1997, to all counts charged in the information, with the exception of count 5, which was dismissed by the People. At the same time, he admitted the four prior serious and/or violent felony convictions. The trial court then referred the case to the probation department for a recommendation and report prior to sentencing. After Roam waived time for sentencing, the sentencing hearing was set for October 3, 1997.

A probation report dated October 3, 1997, was received by the trial court. In his report, the probation officer recommended that probation be denied as Roam was statutorily ineligible for probation, and further recommended that Roam be sentenced to the prison term required by the Three Strikes law, 25 years to life. The officer commented that he would recommend a prison sentence even if Roam were not ineligible for probation, on grounds that Roam's substance abuse problem had caused him to place others in danger; his prior convictions were numerous; he had served three prior prison terms; he was on parole at the time of the current offense; and his parole adjustment had been unsatisfactory.

However, the probation officer also commented that the imposition of a 25-year-to-life sentence would be unduly harsh, in light of Roam's essentially nonviolent record and the circumstances of the current offense. Additionally, the probation officer reported that Roam had requested that the court allow him to address his substance abuse problems at Delancey Street, which had accepted him into a rehabilitation program.

According to the People, the October 3, 1997, sentencing hearing was continued three times while the probation report was being completed and various motions were made by defendant, including a motion to set aside the guilty plea. The record is silent as to the specifics of the motions. At some point, Roam apparently requested that the trial court exercise its discretion under section 1385, subdivision (a) to strike Roam's prior serious and/or violent felony convictions pursuant to *People* v. *Superior Court* (*Romero*) (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628] (*Romero*). In January 1998, both Roam and the People filed points and authorities concerning the application of the recent decision of *People* v. *Williams, supra,* 17 Cal.4th 148, to the issue of striking the prior convictions.

A probation and sentencing hearing was eventually held on February 27, 1998. The minute order of February 27, 1998, reflects that the court ruled that "Def[endant] to be SORP'ed into Delancy [*sic*] Street Foundation in L.A. [Court] retains jurisdiction." The terms of the "SORP" (supervised OR) order required Roam to submit to drug and alcohol testing, to reside at Delancey Street unless granted permission to live elsewhere by the court or pretrial services, and to be monitored by pretrial services through supervised OR and Delancey Street.

The People objected to the supervised OR order and requested that Roam be sentenced. The trial court refused the request. However, Roam was not immediately released on supervised OR, apparently as a result of difficulties with Delancey Street arrangements. On March 6, 1998, the parties appeared

for another hearing with respect to the supervised OR release. The People renewed their request that Roam be sentenced, and, alternatively, requested that a supervised OR report be prepared and that notice and a hearing be provided. The court granted the People's request, and a formal hearing was set for March 13, 1998.

The office of pretrial services prepared a supervised OR report for the March 13, 1998, hearing, which recommended denial of release on OR. The grounds for the recommendation were Roam's extensive criminal history, prior strike convictions, past prison time served, and his commission of the current offense while on both parole and probation.

Also prior to the March 13, 1998, hearing, Roam's attorney filed points and authorities arguing that Roam should be released on supervised OR to Delancey Street because "he does deserve the opportunity to work himself out of the mess he has created." The People filed written opposition to supervised OR release, and also to Roam's request that the court exercise its discretion to strike his prior convictions. The People argued that Roam is a dangerous career criminal who did not qualify to be released on his OR under the criteria set forth in section 1270.1, because his past history shows he is a danger to the public.

On March 13, 1998, a hearing was held concerning the trial court's intent to release Roam on supervised OR to Delancey Street. The court declined either to make any rulings pursuant to *Romero* or to sentence Roam, and instead determined that releasing Roam on supervised OR was appropriate. The court explained, "I believe it is in society's interest, if possible, to rehabilitate rather than incarcerate this defendant for life. I believe that is the motivation in this case for which I have elected to not sentence at this time the defendant under the strike law, but rather make a guarded determination that if the defendant is able to demonstrate . . . that he has the ability to address that underlying problem, that he can be rehabilitated rather than simply give up and commit him to life in a penitentiary."

The court further explained that its purpose in deferring its *Romero* rulings and its sentencing of Roam, was to seek additional information before making those rulings. The court stated, "You [the People] do not deny that I have the power to simply strike those strikes as we sit here and then impose whatever sentence I feel is appropriate. . . . [¶] Now, rather than do that, what I'm attempting to do is allow the defendant the opportunity, while still having the power of this court, to follow what very well may be your position in this matter, that this defendant is not rehabilitateable [*sic*] and, therefore, the full weight of that Three Strike legislation would fall upon

him. . . . [¶] The simple issue is that I am not willing at this point to make that decision without further evidence before me of a concrete nature that this defendant is not amenable to that type of rehabilitation."

The People objected, arguing that sentencing should not be deferred and requesting that the court go forward with the *Romero* hearing. The court declined to do so. However, the court set a review date for May 15, 1998. The court then issued a written order dated March 23, 1998, releasing Roam from custody on his OR and directing Roam's counsel to take Roam to the airport for the next flight to Los Angeles, where he was to proceed to Delancey Street. Roam arrived at Delancey Street on March 23, 1998.

The People petitioned for a writ of mandate directing the trial court to vacate its order of March 23, 1998. We issued an alternative writ and order to show cause why the writ should not issue as requested. We also granted the requests to file amicus curiae briefs on behalf of Roam of the Santa Clara County Public Defender's Office and the Office of the Alternate Defender, Santa Clara County. However, on July 22, 1998, Roam left Delancey Street without authorization and without successfully completing the program. A "no bail" warrant for his arrest was issued by the trial court on July 31, 1998. Since then, we have been advised by counsel that Roam was arrested in Arkansas and is presently in custody in San Quentin prison.

III. DISCUSSION

A. *The People May Seek Writ Relief From the Supervised OR Order*

■ As a threshold matter, the People's right to seek writ relief from the supervised OR order must be addressed. While it is true that the People's right to appeal or to seek extraordinary relief is very limited, the California Supreme Court has held that the People may seek review of an alleged error when "a trial court has acted in excess of its jurisdiction and the need for such review outweighs the risk of harassment of the accused." (*People* v. *Superior Court* (*Stanley*) (1979) 24 Cal.3d 622, 626 [156 Cal.Rptr. 626, 596 P.2d 691].)

As discussed below, respondent court's supervised OR order was made in excess of its jurisdiction in this Three Strikes case; we also find that the need for review of this important issue outweighs the negligible risk of harassment to defendant Roam. We reject Roam's contention that writ review is improper because it will harass him by violating the promise of leniency he received in exchange for his guilty plea, as the plea agreement is not reflected in the record, and, in any event, we find no real possibility that writ

review will subject Roam to retrial or other forms of harassment by the People. Accordingly, we agree that writ review is available to the People in this matter.

### B. *Statutory Limitations on Sentencing Three Strikes Defendants*

■ The trial court's options for disposition of a defendant who comes within the ambit of the Three Strikes law are strictly limited by statute. When a defendant is convicted of a felony, and it is pleaded and proved that he has committed one or more prior felonies defined as violent or serious, sentencing must proceed under the Three Strikes law. (§§ 667, subd. (c), 1170.12, subd. (a); *Romero, supra,* 13 Cal.4th at p. 505.) If the defendant has two or more prior convictions which qualify as "strikes," the required sentence is an indeterminate term of life imprisonment. (§§ 667, subd. (e)(2)(A), 1170.12, subd. (c)(2)(A); see *Romero, supra,* 13 Cal.4th at p. 505.)

Probation is not an option for the convicted Three Strikes defendant. "The language of section 667, subdivisions (c) and (e) is entirely clear and without ambiguity. A defendant who is in the 'strike zone' by reason of a prior conviction for a serious or violent felony is not eligible for probation." (*People* v. *Nobleton* (1995) 38 Cal.App.4th 76, 81 [44 Cal.Rptr.2d 611].) Nor may a trial court opt to send the Three Strikes defendant to diversion or to a facility other than state prison, because the mandatory language of section 667, subdivision (c)(4) prohibits those choices: "There shall not be a commitment to any other facility other than the state prison. Diversion shall not be granted nor shall the defendant be eligible for commitment to the California Rehabilitation Center."

However, pursuant to the California Supreme Court's ruling in *Romero,* the trial court may elect to remove the defendant from the Three Strikes scheme in the furtherance of justice. On its own motion, the court may exercise its discretion to dismiss or "strike" prior felony conviction allegations under section 1385, subdivision (a). (*Romero, supra,* 13 Cal.4th at pp. 529-530; see also *People* v. *Williams, supra,* 17 Cal.4th at p. 161.) Whether justice would be better served by deeming the defendant to be outside the spirit of the Three Strikes scheme, and by treating him "as though he had not previously been convicted of one or more serious and/or violent felonies" is determined by the following factors: "the nature and circumstances of [his] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects." (*Williams, supra,* 17 Cal.4th at p. 161.) In determining whether justice would be furthered by removing the defendant from the Three Strikes scheme, the trial court may obtain information about defendant's background, character, and prospects from the probation reports. (See *Williams, supra,* 17 Cal.4th at pp. 148-155, 162.)

Thus, where the trial court is concerned that justice would not be furthered by sentencing a Three Strikes defendant to life in prison, the court's only option is to exercise its discretion, under section 1385, subdivision (a) and *Romero* and *Williams*, to strike the prior qualifying convictions. Once the prior convictions are struck, the defendant is no longer within the ambit of the Three Strikes law and may be eligible for disposition other than immediate sentencing to state prison.[3]

**C.** *Roam Is Not Eligible for Disposition Other Than a State Prison Sentence Unless His Prior Convictions Are Struck*

■ It is undisputed that Roam comes within the scope of the Three Strikes law because he pled guilty to a current felony and four prior convictions of serious and/or violent felonies. The record indicates that the trial court was uncomfortable with sentencing Roam to life in prison as required under the Three Strikes sentencing provisions, and wanted, instead, to give him one more chance for rehabilitation. As well, the trial court sought to test Roam's amenability to rehabilitation before deciding whether to strike his prior convictions in the furtherance of justice.

While the trial court's procedure in this matter reflects a sincere desire to make rulings in the interest of justice, we agree with the People that the court's procedure was unauthorized. Neither Roam nor amicus counsel cite any statutory or decisional authority which sanctions the procedure chosen by respondent court: to defer sentencing a convicted Three Strikes defendant and to release him on supervised OR, for the express purpose of enabling the defendant to attend a rehabilitation program and thereby gathering more information about the defendant's capability for rehabilitation. In so doing, the trial court crafted a sentencing procedure which is not permitted under the Three Strikes law.

Although the trial court termed Roam's release to be on "supervised own recognizance," we find that Roam's attendance at Delancey Street was in the nature of informal probation. ■ Probation is different than a release on OR. Pursuant to section 1270, subdivision (a), a person charged with a felony, who is unwilling or unable to post bail or a deposit, may be released on OR in the court's discretion.

In contrast, probation is the suspension of the imposition of sentence, and the order of conditional and revocable release of the defendant under the

---

[3]For example, pursuant to section 1000, a defendant who pleads guilty to any of certain drug offenses may have judgment deferred pending completion of a rehabilitation program, unless the defendant is ineligible due to a recent felony conviction, a prior drug conviction, or a history of parole or probation revocation. ·

supervision of the probation officer, with the purpose of rehabilitating the defendant. (See Erwin et al., 5 Cal. Criminal Defense Practice (1998) § 90.01[1], p. 90-7.) The trial court has no power to suspend sentence except as incident to the grant of probation. (*Oster* v. *Municipal Court* (1955) 45 Cal.2d 134, 139 [287 P.2d 755].) If the court does suspend the imposition of sentence, the defendant is under an informal grant of probation. (*Ibid.*)

 In the present case, Roam's release to Delancey Street more closely resembles informal probation than a release on OR. It is clear from the record that the trial court's purpose in suspending the imposition of sentence and releasing Roam post conviction was to give him a chance at rehabilitation, and not to simply let him out of custody pending sentencing, probation or appeal.

Therefore, the trial court's supervised OR order constituted an informal grant of probation, rather than OR. The trial court erred because it had no authority to grant informal probation to Roam. As a convicted Three Strikes defendant, he was ineligible for probation pursuant to section 667, subdivision (c). Moreover, the record reflects no basis to release Roam on OR post conviction. After conviction for a noncapital offense, the defendant who has made an application for probation or who has appealed may be released on bail at the discretion of the court. (§ 1272, subd. (3).) However, in the present case, Roam was not eligible for postconviction release on bail, because he was not eligible to apply for probation, nor had he filed a notice of appeal. Most importantly, section 1272 does not provide for postconviction release on OR.

Thus, the trial court had only one procedural option with regard to the disposition of Roam after he pleaded guilty to one current felony and four prior convictions which qualified as strikes: upon receipt of all probation reports, to proceed with sentencing forthwith. As part of the sentencing procedure, the court could have exercised its discretion to remove Roam from the scope of the Three Strikes law by striking his prior convictions.[4] Unless the trial court removes Roam from the "strike zone," it has no authority to defer judgment and grant probation or diversion. Nor is the trial court authorized to defer sentencing in order to test defendant's amenability to rehabilitation and thereby gather more information relevant to sentencing.

We do not find persuasive the arguments in opposition made by Roam and amicus curiae counsel. Roam argues that nothing precludes a defendant's

---

[4]In this opinion, we do not mean to suggest that, in the event the trial court exercises its section 1385, subdivision (a) discretion to dismiss Roam's prior strike convictions prior to sentencing, the court's decision will be affirmed on review by this court. We hold only that the trial court has the option to make such a ruling, and do not express any opinion as to the outcome of appellate review of the ruling.

release on OR to accomplish a purpose within the trial court's discretion. However, as we have discussed above, the trial court had no discretion to release Roam on informal probation prior to sentencing under the Three Strikes law. Likewise, the trial court was not authorized, as amicus curiae counsel suggest, to continue the sentencing hearing indefinitely in order to make further evaluation of Roam's amenability to rehabilitation.

In the present case, the only applicable statutory provision for extending the time for sentencing is section 1191's provision for delaying sentencing pending the receipt of the probation report.[5] The other provisions for delay set forth in section 1191 pertain to pending proceedings for granting or denying probation, and evaluation of sanity. As Roam was not eligible for probation, and no issue of sanity was raised, these two permissible reasons for delay in sentencing do not apply. However, despite Roam's status as a Three Strikes defendant, his sentencing could be properly delayed for receipt of the probation report, pursuant to California Rules of Court, rule 411(b). That rule requires the court to refer the matter to the probation officer for presentence investigation and report even if the defendant is not eligible for probation.

Therefore, pursuant to section 1191, the trial court was empowered to extend the time for pronouncing judgment and sentencing Roam only while the probation report was pending. Neither section 1191, nor any other statutory authority, provides that sentencing may be delayed for other forms of investigation or evaluation such as a trial period of rehabilitation. Accordingly, because the last probation report requested by the trial court was prepared for the March 13, 1998, hearing, no further delay beyond that date in sentencing Roam was permissible.

For these reasons, we conclude that the trial court acted in excess of its jurisdiction in ruling on March 13, 1998, that sentencing would be deferred pending Roam's release on supervised OR to a rehabilitation program at Delancey Street. As of March 13, 1998, the court was required either to

---

[5]Prior to its recent amendment (by Stats. 1998, ch. 931, § 392) section 1191 provided, in pertinent part, that "In the superior court, after a plea, finding, or verdict of guilty, or after a finding or verdict against the defendant on a plea of a former conviction or acquittal, or once in jeopardy, the court shall appoint a time for pronouncing judgment, which shall be within 20 judicial days after the verdict, finding, or plea of guilty, during which time the court shall refer the case to the probation officer for a report if eligible for probation and pursuant to Section 1203. However, the court may extend the time not more than 10 days for the purpose of hearing or determining any motion for a new trial, or in arrest of judgment, and may further extend the time until the probation officer's report is received and until any proceedings for granting or denying probation have been disposed of. If, in the opinion of the court, there is a reasonable ground for believing a defendant insane, the court may extend the time for pronouncing sentence until the question of insanity has been heard and determined . . . ." (As amended by Stats. 1990, ch. 570, § 1, p. 2916, but prior to amendment by Stats. 1998, ch. 931, § 392.)

sentence Roam under the Three Strikes law, or to exercise its discretion under *Romero* to remove him from the scope of the Three Strikes scheme by striking his prior convictions.

## IV. DISPOSITION

Let a peremptory writ of mandate issue commanding respondent court to set aside its order filed March 23, 1998, releasing real party in interest Jeffrey W. Roam on supervised OR to Delancey Street, and to proceed thereafter in accordance with the views expressed in this opinion.

Premo, Acting P. J., and Elia, J., concurred.