JON T. STEPHENS AND SUSANNE STEPHENS, PETITIONERS
v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6997-88.          Filed July 26, 1989.

*Steven C. Greene,* for the petitioners.
*Kristine A. Roth,* for the respondent.

### OPINION

TANNENWALD, *Judge:* Respondent determined the following deficiency in, and additions to, petitioners' Federal income tax for the taxable year 1984:

| | Additions to tax | | |
| Deficiency | Sec. 6653(b)(1) [1] | Sec. 6653(b)(2) | Sec. 6661(a) |
|---|---|---|---|
| $501,835* | $250,918 | ** | $125,459 |

*Liability of Susanne Stephens is limited to the deficiency of $501,835.
**50% of the interest due on $500,020.

After concessions, including the additions, the sole issue for decision is whether petitioners should be allowed to deduct a court-ordered restitution payment and are therefore entitled to an overpayment for which a timely claim was made.

All of the facts have been stipulated, and the stipulation of facts and the attached exhibits are incorporated by reference.

---

[1] All section references are to the Internal Revenue Code as amended and in effect during the year in issue.

At the time of the filing of the petition, petitioners maintained their residence in New York, New York. Susanne Stephens is a party to this proceeding solely by reason of filing a joint return with Jon Stephens. All further references to petitioner are to Jon Stephens unless otherwise stated.

In September 1981, petitioner was indicted for participating in a scheme to defraud Raytheon Co. (Raytheon), a Delaware corporation doing business in the United States and in foreign countries. In December 1982, petitioner was convicted of four counts of wire fraud in violation of 18 U.S.C. section 1343 (1982), one count of transportation of the proceeds of fraud in interstate commerce in violation of 18 U.S.C. section 2314 (1982), and one count of conspiracy in violation of 18 U.S.C. section 371 (1982).[2] On the count of wire fraud, petitioner was sentenced to 5 years' imprisonment and a fine of $1,000. On the remaining three counts of wire fraud, petitioner was sentenced to a 5-year prison term and a $1,000 fine on each count. On the conspiracy count, petitioner was sentenced to a prison term of 5 years and a fine of $10,000. On the count of interstate transportation of the proceeds of fraud, petitioner was sentenced to a prison term of 5 years and a $5,000 fine; execution of this prison term was suspended and petitioner was placed on probation for 5 years on the condition that he make restitution in the amount of $1 million.

While the sentencing judge believed that petitioner did not need rehabilitation, she determined that imprisonment was necessary not only for the protection of the public but also based upon the seriousness of the crimes. She found petitioner to be one of the two "most culpable" participants in the criminal activities and further stated:

But what I consider is the nature of this offense. This offense or the offenses for which you have been found guilty have been deemed criminal and penalties have been set for people who violate those crimes—those statutes. And I must as a judge consider deterrence, general and special. But you don't need to be rehabilitated. All you need to do is just not commit crimes. That's all. You don't need to be rehabilitated. You know

---

[2]The details of the transactions giving rise to the indictment and convictions are set forth in *Lemire v. Commissioner,* T.C. Memo. 1988-167. The convictions were affirmed in *United States v. Lemire,* 720 F.2d 1327 (D.C. Cir. 1983).

you apparently chose, notwithstanding your knowledge, to do what you did.

After learning that petitioner was the beneficial owner of an annuity account in a Bermuda bank, Raytheon brought two civil actions against petitioner and other participants in the Supreme Court of Bermuda for the recovery of the overcharges, seeking damages in the amount of $2,131,488. The funds in that account were the proceeds of the fraudulent activities in respect of which petitioner was convicted, and the transfer of those funds was enjoined pending the outcome of the Raytheon suits.

In October 1984, petitioner and the other participants in the fraudulent activities entered into a settlement agreement with Raytheon (agreement) whereby, among other things, petitioner's court-ordered restitution obligation was settled. The agreement stated that the U.S. District Court for the District of Columbia had issued a restitution order which directed petitioner to make restitution in the amount of $1 million and that petitioner had not yet complied with that order. The agreement also stated that the restraining order on the assets in the Bermuda annuity account should be lifted to allow payment to be made to Raytheon and to resolve by settlement the restitution obligation. Petitioner in settlement of the restitution obligation further agreed to liquidate the proceeds of the Bermuda annuity account, containing at least $530,000, and to execute a promissory note in favor of Raytheon in the amount of $470,000. Lastly, the agreement provided that, if petitioner failed to make the payment from the bank account or if he defaulted in the fulfillment of his obligations of the promissory note, he would be considered as not having satisfied his obligation under the restitution order but that, in the event that he made the required payments, he would be considered as having satisfied the conditions of the restitution order. The bank wired $530,000 to Raytheon from petitioner's bank account in 1984.

In a stipulated decision, in docket number 42216-86 in this Court, petitioner and respondent entered into an agreement to settle a deficiency determined for the taxable year 1976. The underlying basis for that deficiency was unreported income received by petitioner in connection with

the transactions giving rise to his criminal convictions. The stipulated decision states that the adjustment in the present case (taxable year 1984) relating to the $530,000 annuity deposit duplicates the adjustment which gave rise to the deficiency for taxable year 1976.

In his notice of deficiency, respondent determined that petitioners had unreported income of $1 million for taxable year 1984, representing the $530,000 deposit with the Bermuda bank and the interest earned thereon at the time of the settlement. The parties have stipulated that the portion of unreported income representing the annuity deposit was included in income as redetermined for the taxable year 1976 in accordance with the aforementioned stipulated decision in docket number 42216-86. On April 11, 1988, petitioners filed an amended return for taxable year 1984 in which they claimed a refund based upon the $530,000 restitution payment from the Bermuda bank made pursuant to the settlement agreement.

Petitioner asserts that the restitution payment is deductible under section 165. Respondent asserts that the deductibility is proscribed by section 162(f). In the alternative, respondent argues that, if we conclude that the deductibility is governed by section 165 and is not precluded under section 162(f), public policy would prevent the deductibility of the court-ordered restitution payment, or that the repayment is a personal expense and not deductible under section 262, or that, in any event, petitioner has not established a loss. For the following reasons, we hold that the restitution payment is not deductible.

Initially, we think the case will have a better focus if we set forth the general guidelines which will underpin our resolution of what we think is the basic issue herein. First, the parties have devoted considerable attention to the question whether the governing provision is section 162 (and therefore automatically section 162(f)) or section 165. We think the answer to this question is clearly section 165. The decided cases establish that a restitution payment, such as is involved herein, is not an "ordinary and necessary" business expense as required by section 162(a) but rather gives rise to a loss in a "transaction entered into for profit" under section 165(c)(2). *Mannette v. Commissioner*, 69 T.C.

990, 992-994 (1978). Cf. *Holmes Enterprises, Inc. v. Commissioner,* 69 T.C. 114, 116-117 (1977), and *Holt v. Commissioner,* 69 T.C. 75, 78 (1977), affd. per curiam 611 F.2d 1160 (5th Cir. 1980) (forfeitures and confiscation of property).

Second, since resolution of this case does not involve the application of section 162(a), the provisions of section 162(f) by their terms do not apply.[3] However, it does not follow that the standards, which have been established for the application of section 162(f) to payments which would otherwise be allowable under section 162(a), should not be utilized to determine whether a taxpayer should be denied a deduction for a payment which might otherwise be allowable under section 165(c)(2). It is not necessary to our decision herein that we decide whether the public policy considerations involved in the application of section 165(c)(2) are broader than those encompassed by section 162(f). See *Blackman v. Commissioner,* 88 T.C. 677 (1987), affd. without published opinion 867 F.2d 605 (1st Cir. 1988); Rev. Rul. 82-74, 1982-1 C.B. 100; Rev. Rul. 77-126, 1977-1 C.B. 47. It is enough to conclude as we do herein that, at a minimum, the considerations involved in applying section 162(f) extend to the determination of deductibility under section 165(c)(2).[4]

Section 162(f) was enacted in 1969 to codify the judicially created public policy doctrine that precludes a finding of "necessity" if the allowance of a deduction would frustrate sharply defined national or State policies proscribing the particular types of conduct; fines or penalties, as proscribed by section 162(f), were among the four types of deductions encompassed within the public policy concerns of the Congress. Tax Reform Act of 1969, Pub. L. 91-172, sec. 902(a), 83 Stat. 710; S. Rept. 91-552 (1969), 1969-3 C.B. 423, 596. The question before us is whether restitution payments, under the circumstances involved herein, constitute "any fine or similar penalty paid to a government for the violation of any law." See note 3, *supra.*

---

[3]Sec. 162(f) provides:

Sec. 162(f). FINES AND PENALTIES.—No deduction shall be allowed under subsection (a) for any fine or similar penalty paid to a government for the violation of any law.

[4]Any discussion of broad public policy considerations would require an analysis of the possible difference between "voluntary" and "involuntary" payments. Cf. *Murphree v. United States,* 867 F.2d 883 (5th Cir. 1989); see *Bailey v. Commissioner,* 756 F.2d 44, 47 (6th Cir. 1985).

It is clear that the fact that the payment in question was made to a private person as restitution rather than to a Government agency in and of itself does not preclude the application of section 162(f). *Waldman v. Commissioner,* 88 T.C. 1384, 1389 (1987), affd. in an unpublished order 850 F.2d 611 (9th Cir. 1988).

It is equally clear that the restitution payment involved herein was made as the result of a criminal conviction and that it was ordered in lieu of an additional prison term and as a condition of probation. See sec. 1.162-21(b)(1)(i), Income Tax Regs.[5] That the payment had the effect of reimbursing Raytheon for all or part of its loss and, therefore, had a civil aspect, does not detract from this overriding fact. *United States v. Lemire,* 720 F.2d 1327, 1353 (D.C. Cir. 1983) (dealing with the convictions involved herein); *Waldman v. Commissioner, supra.* Cf. *Wood v. United States,* 863 F.2d 417, 420 (5th Cir. 1989); *Bailey v. Commissioner,* 756 F.2d 44 (6th Cir. 1985). The reimbursement-of-loss aspect was merely incidental to the consequences of petitioner's criminal activities. The circumstances herein are a far cry from those which existed in *S & B Restaurant, Inc. v. Commissioner,* 73 T.C. 1226 (1980). Compare *Southern Pacific Transportation Co. v. Commissioner,* 75 T.C. 497, 646-654 (1980).

With the exception of *Spitz v. United States,* 432 F. Supp. 148 (E.D. Wis. 1977), the authorities upon which petitioners rely involve restitution payments which were not made in the context of any criminal proceeding and are therefore distinguishable. *Spitz* was thoroughly analyzed and dismissed as "neither persuasive nor binding" in *Waldman v. Commissioner,* 88 T.C. at 1388-1389.

We hold that petitioner's restitution payment is not an allowable deduction under section 165(c)(2). In view of this holding, we need not address respondent's contention that petitioners have not otherwise established the amount of the loss.

---

[5]This section provides:

Sec. 1.162-21(b). *Definition.* (1) For purposes of this section a fine or similar penalty includes an amount—

(i) Paid pursuant to conviction or a plea of guilty or nolo contendere for a crime (felony or misdemeanor) in a criminal proceeding.

To reflect the stipulations of the parties on other issues,

*Decision will be entered under Rule 155.*